**Roger Lee CARLOCK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–02–00099–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 15, 2003.

Decided Feb. 5, 2003.

David Colley, Woodson, Colley & Colley, LLP, Mount Pleasant, for Appellant.

Charles C. Bailey, Titus/Camp County Dist. Atty., for State.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Roger Lee Carlock was charged with indecency with a child. He pled not guilty and not true to two paragraphs alleged for enhancement of punishment. A jury found him guilty of the offense charged and also found the two enhancement paragraphs true. He was sentenced, in accordance with the jury's verdict, to ninety-nine years' imprisonment and a $10,000.00 fine.

Carlock alleges the trial court erred: 1) by denying his request to make an opening statement after the State read the indictment in front of the jury, thereby presenting the equivalent of an opening statement; 2) in admitting a videotaped interview of the child, because the statements given by the child were in response to questions calculated to elicit those responses; and 3) in admitting two prior judgments of conviction for the jury to consider in assessing his punishment.

The State read the indictment against Carlock in front of the jury before calling its first witness. The State then announced it would not be making an opening statement. Carlock requested an opportunity to make an opening statement before the State began its case, contending the State had made an opening statement when it read the indictment before the jury. The trial court denied the request. Carlock contents this was error.

 Article 36.01(b) of the Texas Code of Criminal Procedure allows a defendant to make an opening statement immediately after the attorney representing the state makes an opening statement.[1]

---

1. **Art. 36.01. Order of proceeding in trial**

 (a) A jury being impaneled in any criminal action, except as provided by Subsection (b) of this article, the cause shall proceed in the following order:

 1. The indictment or information shall be read to the jury by the attorney prosecut-

TEX.CODE CRIM. PROC. ANN. art. 36.01(b) (Vernon Supp.2003). However, Article 36.01(b) is inapplicable when the state waives its opening statement. *Moore v. State*, 868 S.W.2d 787, 790–91 (Tex.Crim. App.1993). In the cases where the state waives its opening statement, the defendant may make his or her opening statement on the close of the state's case-in-chief. *Id.* at 791.

■ Carlock contends the State made the equivalent of an opening statement in this case when it read the indictment in front of the jury. This Court has been faced with this argument in the past. *Parra v. State*, 935 S.W.2d 862, 871 (Tex.App.-Texarkana 1996, no pet.). In that case, we recognized that the reading of the indictment is required under Article 36.01(a)(1) of the Texas Code of Criminal Procedure. *Id.; see* TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(1) (Vernon Supp.2003). We reasoned that, if reading the indictment under Article 36.01(a)(1) constituted an opening statement, then there would be no need for Article 36.01(a)(3). *Id.; see* TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon Supp.2003). Therefore, the reading of an indictment does not constitute an opening statement by the state. Because it is not an opening statement, Article 36.01(b) is inapplicable to this case and Carlock was limited to making his opening statement

after the State's case-in-chief. His first point of error is[3] overruled.

As his second point of error, Carlock contends the videotaped interview of the child should not have been admitted into evidence because the statements given by the child were in response to questions calculated to elicit those responses.

Carlock was accused of touching the genitals of an eight-year-old male child. A videotaped interview with the child was played for the jury, along with testimony from Kathy Smedley, the program director of the Northeast Texas Child Advocacy Center, who conducted the interview. In addition to the videotaped interview, the child testified in person at the trial.

During the videotaped interview, when asked about "who touches you or tries to see private places," the child answered "Only one person that does it … [t]hat's Robert." Smedley responded to the name "Robert" by saying, "Huh?," and is told again, "Robert." Smedley questions, "Robert?" and the child responds, "Uh-huh." Although the child does not go into great detail about how he knew the person who was touching him, it appears the person lived down the street from the child.

Later in the interview, the child said the name "Roger." The first mention of that name was when the child said, "we saw a black car coming up, looking for Roger." The child does not continue his story about

ing. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

....

3. The State's attorney shall state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof.

....

(b) The defendant's counsel may make the opening statement for the defendant

immediately after the attorney representing the State makes the opening statement for the State. After the defendant's attorney concludes the defendant's opening statement, the State's testimony shall be offered. At the conclusion of the presentation of the State's testimony, the defendant's testimony shall be offered, and the order of proceedings shall continue in the manner described by Subsection (a) of this article.

TEX.CODE CRIM. PROC. ANN. art. 36.01 (Vernon Supp.2003).

the black car because he was interrupted by Smedley, who asked, "Is it Roger or Robert?" When the child answers, "Roger," Smedley asked if she got it wrong when she wrote Robert and changed her earlier notes about who had touched the child from "Robert" to "Roger." On cross-examination and in closing argument, Carlock questioned and focused on these inconsistencies. But, as mentioned earlier, the child testified in person at trial; there, the child only said the name "Roger" and even pointed to Carlock as the person who had touched him.

■ Article 38.071 of the Texas Code of Criminal Procedure provides that the recording of an oral statement by a child who is younger than thirteen and a victim of certain offenses, including indecency with a child, is admissible in evidence so long as certain prerequisites are met, one of which is the statement was not made "in response to questioning calculated to lead the child to make a particular statement." TEX.CODE CRIM. PROC. ANN. art. 38.071, § 5(a)(4) (Vernon Supp.2003). In the past, we have construed this language as invalidating the videotape only if, taken as a whole, the statement is the product of leading questions. *Mallory v. State*, 699 S.W.2d 946, 950 (Tex.App.-Texarkana 1985), *rev'd & remanded on other grounds*, 752 S.W.2d 566 (Tex.Crim.App.1988). Leading questions that are isolated, or those concerning the details of testimony already given in response to proper interrogation, or those concerning matters not directly relating to the offense, will not destroy the videotape's admissibility so long as the overall product is not the result of suggestion. *Id.*

■ From our review of the videotape, we agree Smedley should not have been so quick to switch the child's focus away from the name "Robert" on his first mention of the name "Roger." Smedley admitted on cross-examination it was possible she was listening for the name "Roger" in the interview. We do not know what the child intended to say after he brought up the name "Roger," because Smedley then immediately launched into questioning the child about whether he was saying "Roger," not "Robert." Smedley ultimately concluded she misunderstood the child earlier in the interview when he said Robert had touched him. However, for the remainder of the interview most of Smedley's questions about what happened to the child are phrased along the lines of what did "he" do to you. She only uses the name Roger twice in the remainder of her questioning. We do not find the videotape, taken as a whole, was the result of suggestion.

Carlock also contends the admission of the videotape bolstered the testimony of the victim. We disagree. Instead of bolstering the victim's testimony, this videotape tended to impeach it. The child, when asked on the videotape, "who touches you or tries to see private places," answered, "Only one person that does it ... [t]hat's Robert." Carlock's counsel used the child's inconsistencies on the videotape in his closing argument to the jury. He repeated the name, "Robert, Robert, Robert, Robert, Robert" as he pointed out the inconsistencies in the victim's story.

■ Even an erroneous admission of a videotape can be harmless when the videotape provides a defendant's "main attack" against the victim's testimony. *Clark v. State*, 781 S.W.2d 954, 958–59 (Tex.App.-Fort Worth 1989, no pet.). Therefore, even if the admission of the videotape in this case were error, it was harmless because it provided Carlock with his main attack against the victim's testimony in court. Carlock's second point of error is overruled.

■ As his third point of error, Carlock contends the trial court erred in admitting into evidence two uncertified copies of judgments of conviction against him. The judgments were purportedly for the same convictions alleged in the indictment for enhancement of punishment, and the State introduced such judgments through its witness, Kathy Worth, who had served as Carlock's parole officer. The following testimony shows the context in which these documents were received into evidence:

Q (BY MR. BAILEY) [State's counsel]: Ms. Worth, let me show you State's Exhibit 2 and State's Exhibit 3.

A Yes, sir.

Q Okay. Are those the two cases that you supervised the defendant, Roger Carlock, on?

A Yes, sir, they are.

Q Okay, and he's the same person that's present here in court today; is that correct?

A That's correct.

Q The State would offer State's Exhibit[s] 2 and 3.

. . . .

THE COURT: If you want to examine the documents.

MR. COLLEY [Defense Counsel]: Yes, sir.

Judge, I'm going to object. She's not supervising him. She's not going to be able to testify that those are the judgments that were entered on a certain day and that they apply to this.

THE COURT: It's overruled. They're admitted.

. . . .

Q (BY MR. BAILEY) You mentioned—before I gave you those papers—that you supervised him for indecency with a child in one case and sexual assault in the other; is that correct?

A Yes, sir.

Q Okay, and you're familiar with what he was convicted of and what you were to supervise him for. That's part of your job; is that correct?

A Yes, sir, it is.

Q And you, in performing your job duties, check information about him as far as his convictions—and that, I believe, is even sent to you from the penitentiary—in your effort to supervise someone; is that correct?

A Yes.

Q So, you've seen other copies of those documents in your own files; is that correct?

A Yes, sir, I have.

In *Bautista*, the defendant complained of the use of a parole officer to prove the enhancements used against him, urging that this method was not one of the accepted methods of proving enhancements. *Bautista v. State*, 642 S.W.2d 233, 236 (Tex.App.-Houston [14th Dist.] 1982, pet. ref'd, untimely filed). The defendant pointed to the following as a list of approved methods: 1) testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him; 2) stipulation or judicial admission of the defendant that he has been so convicted; 3) introduction of certified copies of the judgment, sentence, and record of the Texas Department of Corrections or a county jail, including fingerprints of the accused, supported by expert testimony identifying them with known prints of the defendant; 4) comparison by the fact-finder of a record of conviction, which contains photographs and a detailed physical description of the named person, with the appearance of the defendant present in court. *Id.* at 236–37.

In *Bautista*, the defendant argued that using a parole officer was not an approved

method of proving a defendant's prior criminal convictions because the parole officer's testimony was insufficient evidence to establish the defendant was the same person named in and present in court on the dates mentioned in the certified copies of the two judgments. *Id.* The court, while acknowledging the four methods cited by Bautista, concluded the list was not exhaustive, but also decided the testimony of the parole officer satisfied the first suggested method, "Testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him." *Id.* The court points out there would be no self-serving reason for the defendant to admit himself or herself to parole under the previous cases unless he or she was the convicted defendant thereunder. *Id.* at 237.

In this case, Carlock distinguishes *Bautista* because in that case the parole officer testified using certified copies of the judgments against the defendant, whereas in this case copies of the judgments were admitted into evidence that were not certified. Carlock contends the "appropriate" method to introduce the prior judgments was to obtain certified copies and offer those judgments under Texas Rule of Evidence 902(4) as certified public records.[2] Rule 902 describes documents that are self-authenticating, and Carlock's suggested method is certainly the traditional method of introducing a prior judgment. However, if a document is not self-authenticated under Rule 902, it still can be authenticated under Rule 901.[3]

Rule 901(b)(7) illustrates how to authenticate public records and reports. TEX.R. EVID. 901(b)(7). To authenticate a public record which is authorized by law to be recorded or filed in a public office, the testifying witness must be able to provide evidence that the writing is from the public office that keeps that type of record. *Id.* Carlock contends the parole officer could not authenticate the judgments because she was not the custodian of those records and therefore could not authenticate the judgments by "mere testimony that he or she once supervised a Defendant on parole." Carlock is correct. The parole officer was able to testify she was familiar with the defendant and his previous criminal record; however, her testimony was not sufficient to authenticate the two judg-

---

2. TEX.R. EVID. 902 provides:
 **RULE 902. SELF–AUTHENTICATION**
 Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 . . . .
 **(4) Certified Copies of Public Records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2) or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority.

3. TEX.R. EVID. 901 provides:
 **RULE 901. REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION**

 **(a) General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 **(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 . . . .
 (7) *Public records or reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

ments because she was unable to provide the necessary proof that those two judgments were from the public office responsible for maintaining those records. Because the judgments were not certified copies, authentication was required and the parole officer's testimony was not enough.

 The State contends any complaint regarding the introduction of Carlock's prior convictions was waived because Carlock's own witnesses testified about Carlock having prior convictions. On cross-examination, Carlock's sister acknowledged she knew Carlock had been to the penitentiary twice. Another witness, Jeanetta Heath, testified on cross-examination she knew Carlock had been convicted of sex offenses before. The State emphasizes Carlock asked one witness, Phillip Hawkins, about the prior convictions on direct examination and contends this constituted waiver under *Ex parte Girnus*, 640 S.W.2d 619 (Tex.Crim.App.1982).

In *Girnus*, the court's holding was contingent on the defendant taking the stand at the guilt/innocence stage of the trial. *Id.* at 620. The court concluded that, if the defendant takes the stand and any part of his or her prior criminal record is properly used for impeachment, the same need not be reintroduced at the trial on punishment and such evidence may be properly considered by the judge or jury assessing the penalty. *Id.* at 620–21. The facts of this case are distinguishable from *Girnus* because Carlock did not testify. Moreover, the testimony given by the witnesses who testified on Carlock's behalf acknowledged his prior convictions only in general terms. The most specific reference involved the question posed to Carlock's sister, which did mention the year of two convictions. However, no one referred to cause numbers or any other specifics of Carlock's prior convictions alleged in the indictment

and which the State was required to prove. Carlock did not waive this argument.

 It was error for the trial court to admit the two uncertified copies of the judgments because the testimony of the parole officer was insufficient to authenticate the documents under Rule 901. *See* Tex.R. Evid. 901. This error was obviously harmful to Carlock. The jury assessed punishment at ninety-nine years' imprisonment, which was only permissible because of the enhancements. Therefore, Carlock's third point of error is sustained.

We affirm the conviction, but reverse the punishment and remand the case for a new trial on punishment.