**Jose MORALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–05–188–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 9, 2006.

James R. Lawrence, Corpus Christi, for appellant.

Carlos Valdez, Nueces County Dist. Atty., Douglas K. Norman, Asst. Dist. Atty., Corpus Christi, for state.

Before Chief Justice VALDEZ and Justices YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

A jury found appellant, Jose Morales, guilty of aggravated sexual assault of a child. He was sentenced to ninety-nine years and assessed a $5,000 fine. Morales appeals. We affirm.

### I. FACTUAL BACKGROUND

On May 9, 2002, Yvette Benavides (Mrs. Benavides) dropped off her two minor daughters, B.B. and Y. B., at the home of her mother-in-law, Maria Benavides. The paternal grandmother provided child care for her two granddaughters between seven in the morning until four-thirty in the afternoon. Morales was married to Maria Benavides at this time,[1] and was the girls' step-grandfather. The children in the Benavides family referred to him as "Joe-Joe."

Since the youngest daughter, Y.B., was still asleep, Mrs. Benavides laid her down with the grandmother in the grandmother's room. Meanwhile, the older daughter, B.B., then four years old, said she was not sleepy and wanted to watch cartoons. B.B. was laid on the living room couch to watch cartoons. Morales was present in the kitchen, having just returned home

---

1. Jose Morales and Maria Morales divorced two months after B.B.'s outcry of sexual abuse.

from working the night shift. Mrs. Benavides left for work.

When Mrs. Benavides picked up her children after work, she observed B.B. wiggling around as if she had to use the bathroom. Mrs. Benavides, concerned she would have an accident, prodded her into the bathroom, following her to help her undress. B.B. then told her mother she did not want to go to the bathroom because it would hurt her. When asked what she meant, B.B. said she was not supposed to tell but would if her mother promised not to tell anyone else. B.B. revealed that Joe–Joe sat on the floor next to her while she was watching cartoons, and put his hands under her shorts and underwear, and then put his finger into her "private." Jesse Benavides, B.B.'s father, arrived home soon after this statement was made, and B.B. repeated the same thing to him. He then called his mother and niece to come over to his home. Though they were in the house that morning, they did not know what had happened until B.B. retold her story to them. The grandmother then examined B.B. and testified she saw an injury to B.B.'s "privates."

B.B.'s parents took her to Driscoll Children's Hospital where she received a sexual assault examination. Three tears and a labial agglutination were found. A forensic interviewer recorded B.B.'s statement as to the incidents. The parents were told by Child Protective Services not to talk to B.B. about what happened. However, Mrs. Benavides testified at trial that B.B. stated, while being bathed, that she was mad at Joe–Joe for hurting her. Meanwhile, B.B.'s grandmother returned home to wait for Morales and confront him. She testified that when he returned from work the following morning, he denied the allegations but would say nothing further until he spoke to a lawyer.

In a pretrial hearing, the State requested the trial court find B.B. an unavailable witness under article 38.071 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.071, §§ 1, 2 (Vernon 2005). In making this determination, the court considered an admitted affidavit of a licensed counselor who had been seeing B.B. since the incident with Morales occurred, and the sworn testimony of Cynthia Villanueva, then assistant D.A., who testified that B.B. would suffer serious and undue psychological harm if made to testify. The trial court found B.B. unavailable and she did not testify. As B.B. was found unavailable under article 38.071, two additional videotapes were made and admitted into evidence at trial over Morales's objections.

At trial, which commenced on February 22, 2005, Morales pled not guilty to the offense of aggravated sexual assault of a child. The State also tendered testimony of another child, C.T., who subsequently made an outcry statement against Morales. C.T., B.B.'s cousin, lived in Morales's home and testified that on five separate occasions Morales inappropriately touched her. C.T.'s testimony was admitted over Morales's objections.

## II. POINTS OF ERROR

By two points of error, Morales asserts that the trial court erred in (1) allowing three videotapes of the child victim's testimony into evidence, and (2) admitting extraneous offense evidence.

## III. ADMISSION OF THREE VIDEO-TAPES INTO EVIDENCE UNDER ARTICLE 38.071, § 2

### A. Relevant Facts

In his first point of error, Morales contends the trial court erred in admitting the three videotapes of B.B.'s statement in

evidence under article 38.071 of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071 (Vernon 2005). In a pretrial hearing on March 30, 2004, the state sought to admit tape one in lieu of B.B.'s in-court testimony. Morales objected to the first recording as unfair and prejudicial. The court declared B.B. unavailable and allowed the parties to proceed under section 2(b) of article 38.071. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, § 2(b) (Vernon 2005). Morales objected to conducting a second recording without determining whether to admit the first tape, arguing it would impair his rights under due process and due course of law protections. Morales then agreed to submit a list of questions for this second interview pursuant to section 2(b) of article 38.071, so as to exercise his right to confrontation.

■ At a second pretrial hearing on June 3, 2004, Morales objected to the second recording, arguing it failed to comply with article 38.071 because some of the questions he had submitted were omitted. Ms. Villanueva testified that at this pretrial hearing she, defense counsel, and the trial court acknowledged that some of the questions on the list for the second interview had been omitted.[2] The forensic interviewer, Mr. Jimenez, who was established as an expert witness, testified that in this second recording, he did omit some questions that he felt were leading to ensure the tape would not be excluded from evidence.[3]

To ensure protection of Morales's right to confrontation, the trial court ordered a third recording, over Morales's objection. The trial court referred to this third tape as a continuation of the second tape. To again exercise his right to confront the witness, Morales submitted questions to be asked at the third interview. At the third interview, all of Morales's questions were asked by the same interviewer. However, Morales complains that the manner in which the third interview was conducted destroyed any continuity it may otherwise have had with the second interview.

In the second interview, the forensic interviewer appears relaxed and friendly. He offers B.B. markers and makes conversation with her about swimming. His demeanor demonstrates warmth and friendliness, and his voice is neutral, showing neither surprise nor disdain in response to her answers. In the third interview, while his demeanor remains friendly he does not try to befriend B.B. He comes into the room, sits down in front of her, and explains that he is going to ask questions off the list. He does not chat with her and does not offer her any markers. He asks the questions straight off the list, offering little to no guidance when she appears confused.

In *Smith v. State,* 88 S.W.3d 652, 672 (Tex.App.-Tyler 2002, pet. ref'd), written interrogatories, without added questions or comments, were not found to show lack of neutrality when demeanor, manner, and

---

**2.** From the trial court's recitation, we note that the omitted questions are:

What's your address?

What's the name of your teacher?

Do you like Joe–Joe?

Why don't you like him or why do you like him?

Did you tell your cousins Joe–Joe had touched you? (With a follow up question).

**3.** Leading questions that are isolated, or those concerning the details of testimony already given in response to proper interrogation, or those concerning matters not directly relating to the offense, will not destroy the videotape's admissibility so long as the overall product is not the result of suggestion. *Carlock v. State,* 99 S.W.3d 288, 292 (Tex.App.-Texarkana 2003, no pet.).

vocal intonation remained the same.[4] Here, though the interviewer did not establish a rapport with B.B. the way he did in the second interview, his demeanor, manner, and vocal intonations remained the same.

Ms. Villanueva testified that she told the interviewer to ask the questions in the third interview verbatim from the list of submitted questions.[5] She further testified that she told the interviewer not to establish a rapport with the child as she understood the defense desired no additional questions asked. Morales contends that, when the State gave direction to the interviewer, the requirement of neutrality was compromised especially since neither the defense nor the trial court gave these directions to the interviewer. Thus, Morales complains the third interview fails to comply with article 38.071 because it is not neutral.

At a third pretrial hearing held on February 22, 2005, and throughout the trial, Morales objected that none of the three videos complied with article 38.071, sections 2, 4, and 5.[6] *See* Tex.Code Crim. Proc. Ann. art. 38.071, §§ 2, 4, 5 (Vernon 2005). Morales argues impairment of his right to confrontation despite the existence of the multiple recordings.

### B. Standard of Review

 In reviewing a trial court's ruling on the admissibility of evidence, an appellate court must first determine the applicable standard of review. *Guzman v. State*, 955 S.W.2d 85, 87, 89 (Tex.Crim.App.1997) (reviewing the appropriate levels of appellate review in a motion-to-suppress proceeding).[7] In considering a trial court's ruling, an appellate court must determine whether the trial court abused its discretion.[8] *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002) (citing *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim. App.1991) (op. on reh'g)). In other words, the appellate court must uphold the trial

---

**4.** In *Smith v. State*, 88 S.W.3d 652, 671 (Tex. App.-Tyler 2002, pet. ref'd.), our sister court analyzed the first interview of the child complainant made under article 38.071, § 2(a). *See id.; see also* Tex.Code of Crim. Proc. Ann. § 38.071, § 2(a), (b) (Vernon 2005). The second interview, made under section 2(b), was conducted solely to ask the written interrogatories propounded by counsel. *Smith*, 88 S.W.3d at 671; *see also* Tex. of Crim. Proc. Ann. § 38.071, § 2(a), (b). The court concluded that the interview was objective and thus the interviewer was neutral, because the demeanor, mannerisms, and vocal intonations of the interviewer did not suggest answers or reveal her reaction to the child victim's responses. *Smith*, 88 S.W.3d at 672.

**5.** Ms. Villanueva testified at trial that she was operating according to her understanding of the trial court's instructions.

**6.** All of Morales's pretrial objections were carried over and overruled at trial.

**7.** In *Guzman*, the Court of Criminal Appeals observed that, "An appellate court's review of a trial court's evidentiary rulings generally does not involve an 'application of law to fact question' or a 'mixed question of law and fact.'" *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The Court further noted that trial courts have broad discretion in their evidentiary rulings and are usually in the best position to make the call on whether certain evidence should be admitted or excluded. *Id.*

**8.** A trial court has wide discretion in its decision to admit or exclude evidence. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Crim. App.1991) (en banc); *Reyes v. State*, 69 S.W.3d 725, 735 (Tex.App.-Corpus Christi 2002 pet. ref'd). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery*, 810 S.W.2d at 380. Therefore, the trial court's ruling must be at least within the zone of reasonable disagreement to prevent reversal. *Id.* at 391. The inquiry on appeal is whether the result was reached in an arbitrary or capricious manner. *Id.* at 380.

court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* (internal citations omitted). Finally, an appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.* (citing *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000)); *Garcia v. State,* 792 S.W.2d 88, 92 (Tex.Crim.App.1990).

### C. Article 38.071

 A plain language reading of article 38.071 indicates that a child-complainant must be unavailable to testify before a videotape of the child's testimony is admissible. *See* Tex.Code Crim. Proc. Ann. art., § 1 (Vernon 2005). The purpose of the article is to provide a way to protect child complainants while at the same time preserving the constitutional rights of those who stand accused. Tex.Code Crim. Proc. Ann. art. 38.071 (Vernon 2005); *Smith v. State,* 88 S.W.3d 652, 659 n. 2 (Tex.App.-Tyler 2002, pet. ref'd) (concluding that the

interviewer was neutral). Among those constitutional rights is the right to confrontation which includes cross examination.[9] U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.071. Under article 38.071, the right to confrontation is not violated if the defendant is given the opportunity to submit written interrogatories to the unavailable witness. *See* Tex. Code Crim. Proc. Ann. article 38.071, § 2(b). Article 38.071, § 2(b) is an effective alternative to the traditional face-to-face confrontation provided at trial.[10] *Id.*

### D. Application

 To preserve a complaint for appellate review, a party must present a timely request, objection, or motion to the trial court stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context. Tex. R.App. P. 33.1; *Blue v. State,* 41 S.W.3d 129, 131 (Tex.Crim.App.2000) (en banc); *Delacruz v. State,* 167 S.W.3d 904, 905 (Tex.App.-Texarkana 2005, no pet.). A

---

**9.** The common law guarantee of the right to cross examine witnesses exists to "tease out the truth." *Reyna v. State,* 168 S.W.3d 173, 182–83 (Tex.Crim.App.2005) (citing *Crawford v. State,* 541 U.S. 36, 43–46, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Importantly, it allows for rigorous testing of witnesses in an adversarial proceeding. "The elements of confrontation guaranteed by the Sixth Amendment include the physical presence of the witness, an oath, cross-examination, and observation of the witness's demeanor by the trier of fact." *Craig,* 497 U.S. at 846, 110 S.Ct. 3157.

**10.** Section 2 of article 38.071 of the code of criminal procedure reads in part:

(a) The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child

abuse cases that seeks to find the truth of the matter.

(b) If a recording is made under Subsection (a) of this section and after an indictment is returned or a complaint has been filed, by motion of the attorney representing the state or the attorney representing the defendant and on the approval of the court, both attorneys may propound written interrogatories that shall be presented by the same neutral individual who made the initial inquiries, if possible, and recorded under the same or similar circumstances of the original recording with the time and date of the inquiry clearly indicated in the recording.

(c) A recording made under Subsection (a) of this section is not admissible into evidence unless a recording made under Subsection (b) is admitted at the same time if a recording under Subsection (b) was requested prior to the time of the hearing or proceeding.

Tex.Code Crim. Proc. Ann. art. 38.071, § 2 (Vernon 2005).

party's failure to timely and specifically object at trial forfeits any error on appeal. *Blue,* 41 S.W.3d at 131. Even constitutional error may be waived by the failure to specifically object. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim.App.1990) (en banc).

### 1. The Admissibility of Tape One

The trial court overruled Morales' objection to tape one as being unfair and prejudicial. It was recorded one day after the incident occurred. We must look to article 38.071, § 2(c) since the tape was made before an indictment was returned or a complaint was filed. Article 38.071, § 2(c) provides:

> (c) A recording made under Subsection (a) of this section is not admissible into evidence unless a recording made under Subsection (b) is admitted at the same time if a recording under Subsection (b) was requested prior to the time of the hearing or proceeding.

Tex.Code Crim. Proc. Ann. art. 38.071, § 2(c) (Vernon 2005). Thus, this first tape cannot be admitted into evidence unless tape two or three is admitted simultaneously.

### 2. The Admissibility of Tapes Two and Three

 The State argues that Morales is estopped "from making an appellate error of an action it induced" according to the doctrine of "invited error." *Prystash v. State,* 3 S.W.3d 522, 531 (Tex.Crim.App. 1999) (en banc). "If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error." *Id.*

 There is no violation of the right to confrontation with the admission of videotaped testimony if the defendant has the opportunity to cross-examine the witness. *See Fultz v. State,* 940 S.W.2d 758, 761 (Tex.App.-Texarkana 1997, pet. ref'd) (citing *Carson v. Collins,* 993 F.2d 461, 464 (5th Cir.1993)). In fact, article 38.071, section 3 provides an alternative method of confrontation that Morales could have elected to use:

> Sec. 3. (a) On its own motion or on the motion of the attorney representing the state or the attorney representing the defendant, the court may order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact. To the extent practicable, only the judge, the court reporter, the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys and the judge may question the child. To the extent practicable, the persons necessary to operate the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child and to communicate contemporaneously with his attorney during periods of recess or by audio contact, but the court shall attempt to ensure that the child cannot hear or see the defendant. The court shall permit the attorney for the defendant adequate opportunity to confer with the defendant during cross-examination of the child. On application of the attorney for the defendant, the court may recess the proceeding before or during cross-examination of the child for a reasonable time to allow the attorney

for the defendant to confer with defendant.

TEX.CODE CRIM. PROC. ANN. art. 38.071, § 3 (Vernon 2005).[11] Under the statute, Morales could have utilized section 3 as an opportunity to cross-examine the victim under oath in a manner that would have preserved the welfare and well-being of B.B.[12] See TEX.CODE CRIM. PROC. ANN. art. 38.071, § 3(b). In the first pretrial hearing on March 30, 2004, the trial court stated it presumed that, even if the two tapes were made, defense counsel would still request that the child be interviewed via closed-circuit television at the time of the trial. The State acknowledged such a request would be permissible as the statute does not bar the use of both sections in preserving the right to confrontation. However, Morales did not take advantage of this opportunity and now cannot claim that he was denied any rights under the confrontation clause.[13] Fultz, 940 S.W.2d at 761.

Morales' argument that the code does not provide for multiple recordings is also invalid under the doctrine of invited error as in both instances, regarding the second and third tapes, he acquiesced by submitting questions under section 2 and electing to request a recording under section 3. By failing to utilize all the provisions available under article 38.071, Morales opted not to exercise his right to confrontation as authorized under section 3. Thus, Morales is estopped from complaining on appeal that admitting the tapes in evidence denied him his right to confrontation when the trial court afforded the relief he requested on the method of confrontation he chose. See Fultz, 940 S.W.2d at 761; see also Prystash, 3 S.W.3d at 531.

■■■ Moreover, in response to Morales's complaints as to each tape at each pretrial hearing, the trial court responded by affording him an opportunity to exercise his right to confront B.B. under the specific provisions of article 38.071 that Morales used as grounds for his complaints. Importantly, Morales did not complain below nor does he now on appeal that the trial court improvidently declared B.B. unavailable to testify under section 1 of article 38.071. See TEX.CODE CRIM. PROC. ANN. art. 38.071, § 1. Rather, seeking to exercise his right to confront B.B., he agreed to propound questions for purposes of the second interview and that procedure is statutorily authorized. See TEX.CODE CRIM. PROC. ANN. art. 38.071, § 2(b). Because Morales complained that his questions were not asked,[14] the trial court re-

11. This provision is to be utilized after charges have been filed against a specific defendant or defendants and its focus is upon the exercise of the right of counsel, and the right of confrontation which includes the right of cross-examination. See Lawson v. State, 697 S.W.2d 799, 802 (Tex.App.-Houston [1st Dist.] 1985), rev'd on other grounds, 752 S.W.2d 572 (Tex.Crim.App.1988). Thus, section 3 is an appropriate means of confronting a child-complainant that Morales failed to utilize. See TEX.CODE CRIM. PROC. ANN. art. 38.071, § 3 (Vernon 2005).

12. We recognize that belated cross-examination, under certain circumstances, can serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement. Buckley v. State, 786 S.W.2d 357, 360 (Tex.Crim.App.1990) (en banc).

13. Alternatively, article 38.071 section 2 reads "may propound," and so Morales was not constrained to choose this method. He could have not asked any questions at all and allowed only the first tape in or he could have requested to be present when the questions were propounded. He chose the former and then complained.

14. See note 2. As to the propounded questions, we note that in the first videotaped interview, the interviewer asked B.B. where she lived and she responded she lived with her parents. Before reaching the sexual con-

sponded by ordering a continuation of that interview. Thus, we further conclude that Morales has not shown deprivation of his constitutional right to cross-examine the child because (1) he did not object to the trial court's declaration that B.B. was unavailable, (2) the trial court provided him the redress he sought, and (3) he has not shown that the trial court disregarded his substantial rights. *See* TEX.R.APP. P. 44.2.

■ Even assuming the trial court erred, we conclude that Morales has not shown the tapes are incomplete.[15] Further, he has not demonstrated reversible error. *See* TEX.R.APP. P. 44.2; *Weatherred,* 15 S.W.3d at 542. Further still, his objection as to the neutrality of the interviewer was untimely. *See* TEX.R.APP. P. 33.1(a); *Martinez v. State,* 22 S.W.3d 504, 507 (Tex.Crim.App.2000) (stating that the purpose of a timely objection is to "give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection").

■ Morales did not present a neutrality complaint to the first tape or the second tape and he waited until the eve of trial, when the trial court could not effect a remedy, to complain. We conclude the objection was untimely. *Martinez,* 22 S.W.3d at 507. Moreover, we have reviewed the recordings and addressed in this opinion the question of neutrality. We will not disturb the trial court's evidentiary rulings under article 38.071 unless the trial court abused its discretion by reaching a decision that falls outside the zone of reasonable disagreement. *See Weatherred,*

15 S.W.3d at 542; *Garcia,* 792 S.W.2d at 92. We conclude that the trial court's ruling is supported by the record and is not an abuse of discretion.

### E. Disposition

Morales consistently chose to submit written interrogatories as his method of confrontation rather than consider the suggestion by the trial court that section 3 was also available. Using article 38.071 as its guiding rule or principle, the trial court chose to order a continuation of tape two, by conducting a third recording so as to preserve Morales' right to confrontation. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, §§ 1, 2(b). In light of what was before the trial court at the time each complained-of ruling was made, we conclude that the trial court did not abuse its discretion in admitting the videotapes. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, §§ 1, 2(b); *Willover,* 70 S.W.3d at 845. We overrule Morales first point of error.

## IV. BALANCING THE PREJUDICIAL EFFECTS OF EXTRANEOUS OFFENSE EVIDENCE

### A. Relevant Facts

In his second point of error, Morales contends that the trial court erred in admitting evidence of extraneous offenses regarding C.T., the victim's cousin and Morales' step-granddaughter, because its prejudicial effect outweighed its probative value. C.T.'s outcry was made subsequent to B.B.'s. C.T. testified that, beginning at

tact matter, the interviewer also asked B.B. whether Joe–Joe was nice to her and she responded that he was. The interviewer also asked her if she told anyone that Joe–Joe touched her and if anyone told her whether he did anything to them. Morales has not shown that, absent answers to the remaining two unanswered questions (as to her teacher's name and why B.B. did or did not like Joe–

Joe) affected his substantial rights. *See* TEX. R.APP. P. 44.2.

**15.** As discussed in note 15, the record shows that B.B. had already provided information Morales sought and, to the extent she did not, Morales has not shown deprivation of his substantial rights.

age ten, Morales sexually assaulted her several times. The instances she testified to included Morales inappropriately touching her, sticking his tongue into her mouth while kissing her, touching her vaginal area, rubbing her leg while attempting to reach up her shorts, and attempting to bite her breast.

Morales argues that extraneous offense evidence was not necessary to prove opportunity or intent. He asserts that jury had already heard evidence that he was alone with B.B. and, thus, extraneous offense evidence was not necessary to prove opportunity to commit the offense. He further argues that, because the jury had already heard no one else was present, extraneous offense evidence was not necessary to prove intent. The State responds this extraneous evidence was necessary to establish (1) why its expert witness had "reason to believe" Morales committed the act in question, and (2) his state of mind at the time, an essential element of the crime. The State further responds that Morales opened the door by attacking the credibility of the victim, suggesting he had been framed by family members, and suggesting fabrication and conspiracy.

### B. Standard of Review

We review the trial court's ruling concerning the rules of evidence for an abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex.Crim.App.2005) (en banc) (citing *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App.2004)). We uphold the trial court's ruling on the admissibility of evidence so long as the ruling falls within the "zone of reasonable disagreement." *Id.* (quoting *Montgomery*, 810 S.W.2d at 391).

### C. Preservation of Error

Requisite for review of any complaint on appeal is preservation of error.

Tex.R.App. P. 33.1 (a); *Blue*, 41 S.W.3d at 131. To preserve a complaint for appellate review, a party must present a timely request, objection, or motion to the trial court stating the specific grounds for the desired ruling if the specific grounds were not apparent from the context. *Adams v. State*, 180 S.W.3d 386, 399 (Tex.App.-Corpus Christi 2005, no pet.) (citing Tex.R.App. P. 33.1(a); *Blue*, 41 S.W.3d at 131). The complaining party must also obtain an adverse ruling on the objection. *Id.* Generally, a party's failure to timely and specifically object at trial forfeits any error. Tex.R.App. P. 33.1; *see Blue*, 41 S.W.3d at 131.

### D. Application

An objection must be made under both rules 404(b) and 403 to preserve error regarding the admission of evidence of an extraneous offense. *Montgomery*, 810 S.W.2d at 388 (stating that an objection under rule 404(b) must now be followed by a further objection based on rule 403); *see* Tex.R. Evid. 403, 404(b). Extraneous offense evidence is admissible under both rules 404(b) and 403 if it satisfies the two-part test set out in *Martin*:

(1) whether the extraneous offense evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and (2) whether the probative value of the evidence is not substantially outweighed by unfair prejudice.

*Martin*, 173 S.W.3d at 467.

The State contends the defense failed to raise a rule 404(b) objection. In the instant case, Morales objected that the State's attempt to admit evidence during the culpability phase of the trial violated "part of the 38.37 on the extraneous offense. And certainly 403, and possibly 404(b) with the prejudicial effect it would

have on this particular case."[16] The court declined to rule at that instant, reserving its decision until it had time to review case law. Later, the objection was overruled and the extraneous evidence was admitted. Morales agreed to limit the expert witness's testimony to the contents of the report, but maintained his objection. The trial court noted Morales had not waived anything and that his objection was noted. Thus, Morales preserved error by securing a ruling on a timely and specific objection.

### 1. Applying the Two Prongs of the Martin Test

#### a. Part 1: Relevance of extraneous offense evidence apart from tendency to prove conduct in conformity with character

Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. However, not all relevant evidence is admissible. See TEX.R. EVID. 402. Some relevant evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. TEX.R. EVID. 404(b); Johnston v. State, 145 S.W.3d 215, 219 (Tex.Crim.App.2004). However, under rule 404(b), extraneous offense evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

TEX.R. EVID. 404(b). Extraneous offense evidence may also be admissible when a defendant raises a defensive issue that negates an element of the offense with which he is charged.[17] Martin, 173 S.W.3d at 466. Determining the relevance of extraneous evidence apart from character conformity is a decision for the trial court. Id. (quoting Moses v. State, 105 S.W.3d 622, 627 (Tex.Crim.App.2003)).

In this case, the trial court's ruling to allowing the evidence under rule 404(b) is supported by the record and, thus, was not outside the "zone of reasonable disagreement." Extraneous evidence, as noted above, can be admitted to prove opportunity, or an essential element if the defendant raises an issue that negates it. Morales presented evidence that he was away from the house for most of the day obtaining stickers for both his and his ex-wife's vehicles. This permitted the court to make a reasonable inference that Morales was suggesting he did not have the time to commit the alleged acts. By presenting his activities on the day in question to demonstrate lack of opportunity to commit the crime, he opened the door to admission of the extraneous evidence. Powell v. State, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001) (during opening statement and in cross-examination of State's witnesses, defense counsel raised issue of lack of opportunity for the defendant to have committed the sexual offenses); Wolfberg v. State, 73 S.W.3d 441, 443 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (permitting child victims sister to testify that defendant had

**16.** The best objection would be that such evidence is inadmissible under rule 404(b), but an objection that the evidence is not "relevant," constitutes an "extraneous offense" or "extraneous misconduct," though not precise, "ought ordinarily [be] sufficient under the circumstances to apprise the trial court of the nature of the complaint." Montgomery, 810

S.W.2d at 387 (citing Zillender v. State, 557 S.W.2d 515 (Tex.Crim.App.1977)).

**17.** A party may introduce extraneous evidence if that evidence logically tends to make an elemental fact more or less probable, inferentially leads to an elemental fact, or is defensive evidence that undermines the elemental fact. Montgomery, 810 S.W.2d at 372.

sexually assaulted her to show opportunity).

■ The Court of Criminal Appeals has recognized that extraneous sexual misconduct evidence may be relevant to counteract a perceived societal aversion to the idea that parents or those standing in *loco parentis* can commit sexual crimes against their own children. *Boutwell v. State*, 719 S.W.2d 164, 175–76 (Tex.Crim. App.1986). This evidence may be needed because the State's case may depend upon the credibility of the child-complainant, as most incestuous crimes occur in secrecy. *Montgomery*, 810 S.W.2d at 394. When the credibility of the child-complainant is challenged by the accused, evidence of other identical or similar acts of sexual misconduct may be used to support the testimony of the child-complainant if it logically shows a lascivious attitude (relevant to culpable intent) and a willingness to act on that attitude (relevant to prohibited conduct) that a jury might not otherwise want to acknowledge as existing in some familial relationships. *Id.* When the circumstances of the case show the evidence logically serves its purpose, it may be relevant under rule 404(b) apart from showing character conformity. *Id.* In the instant case, C.T.'s testimony logically demonstrates that B.B. is a credible witness by showing that an incestuous relationship could arise between a step-grandfather and his step-grandchildren.

The trial court did not err in admitting the extraneous sexual offenses as they were admissible under rule 404(b) to show opportunity, *Powell*, 63 S.W.3d at 438, *Wolfberg*, 73 S.W.3d at 443, and to prove an essential element. *Contreras v. State*, 838 S.W.2d 594, 600 (Tex.App.-Corpus Christi 1992, pet. ref'd) (allowing similar burglary and sexual offenses to show intent and identity); *Johnson v. State*, 932 S.W.2d 296, 302–04 (Tex.App.-Austin 1996,

pet. ref'd) (admitting substantially similar extraneous offense to show intent). Nor was it error to allow the extraneous sexual offense to serve as the basis for the State's expert witness's reason to believe Morales committed the charged act. *Blacklock v. State*, 820 S.W.2d 882, 884–85 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd) (demonstrating that extraneous sexual offenses were relevant in a sexual assault case in the pretrial competency hearing to prove a pattern of behavior on which the expert relied for his testimony).

### b. Part 2: Probative value of the evidence must substantially outweigh unfair prejudice

■ In addition to challenging relevancy, Morales also successfully preserved his objection that the prejudicial effect of the extraneous offense evidence outweighed its probative value. This balancing test is expressed in rule 403, which states, "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. A presumption exists whereby relevant evidence is more probative than it is prejudicial. *Rivera v. State*, 130 S.W.3d 454, 460 (Tex. App.-Corpus Christi 2004) (citing *Phelps v. State*, 5 S.W.3d 788, 795 (Tex.App.-San Antonio 1999, pet. ref'd)).

■ A rule 403 analysis should consider the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible way, (3) the time needed to develop the evidence, and (4) the proponents need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App.2004) (citing *Montgomery*, 810 S.W.2d at 372). When considering a trial court's rule 403

balancing test determination, the appellate court is not to conduct a de novo review of the record. *See Montgomery,* 810 S.W.2d at 392. The result a trial court reaches in conducting its rule 403 balancing test is to be reversed "rarely and only after a clear abuse of discretion" is found. *Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App. 1999) (quoting *Montgomery,* 810 S.W.2d at 389). Thus, we apply the facts of the instant case to these factors.

C.T.'s testimony, as direct evidence, has great probative value and provided strong and compelling evidence to establish (1) opportunity and (2) state of mind. Further, there were significant similarities and circumstances between the instant offense and the conduct C.T. described in her testimony. *See Boutwell,* 719 S.W.2d at 176 (noting extraneous sexual offenses between a defendant and a third party are not always inadmissible if they are relevant to a material issue in the case, and the relevancy value outweighs its prejudicial potential). Through her testimony, a pattern showing Morales's increasing brazenness developed. His inappropriate touches soon turned into an aggressive attempt to bite her breast. C.T. testified that this last incident occurred a month before the incident involving B.B.

The extraneous offenses introduced were not so inherently inflammatory that they would have swayed the jury in some irrational and indelible manner. *See Alexander v. State,* 88 S.W.3d 772, 778 (Tex. App.-Corpus Christi 2002). Time needed to develop the evidence weighs in favor of admissibility. *Erazo,* 144 S.W.3d at 489. C.T. outcried soon after B.B. did, and despite Morales's objections, was readily available to testify.

■ When considering the last factor, the proponents need for evidence, the reviewing court should address three questions: (1) Does the proponent have other

available evidence to establish the fact of consequence that the evidence is relevant to show? (2) If so, how strong is that other evidence? and (3) Is the fact of consequence related to an issue that is in dispute? *Erazo,* 144 S.W.3d at 495–96 (citing *Montgomery,* 810 S.W.2d at 390). The State adduced other relevant evidence. It had the testimony of various family members that Morales was alone that morning with B.B. Raising the defensive theory of lack of opportunity is sufficient to justify admission of extraneous offense evidence under 404(b). *Powell,* 63 S.W.3d at 438; *Wolfberg,* 73 S.W.3d at 443. Here, this other evidence was not as strong as C.T.'s first-hand account. Although the State had other evidence, the factors under rule 403 are merely factors included among other factors to be considered. *See Hayden v. State,* 155 S.W.3d 640, 646 (Tex. App.-Eastland, 2005) (citing *Wyatt v. State,* 23 S.W.3d 18, 26 (Tex.Crim.App. 2000)). All of the other evidence was related to the issue in dispute as, taken together, it showed similar circumstances and close temporal proximity to B.B.'s outcry.

### E. Disposition

A balancing of the factors does not reveal a "clear abuse of discretion" on the part of the trial court. *Mozon,* 991 S.W.2d at 847 (quoting *Montgomery,* 810 S.W.2d at 389). Therefore, we conclude the trial court properly conducted the rule 403 balancing test and did not abuse its discretion in concluding that the probative value of the extraneous offense evidence was not substantially outweighed by any prejudicial effect. We overrule Morales's second point of error.

### IV. CONCLUSION

Having overruled Morales's two points of error on appeal, we affirm.

Concurring Opinion by Justice YAÑEZ.

Concurring Opinion by Justice YAÑEZ.

The majority concludes that appellant is "estopped" from asserting that he was denied his rights under the confrontation clause because he failed to utilize section 3 of article 38.071, which provides that a child sexual assault victim may testify by closed-circuit television.[1] I find no authority, either in article 38.071 or in caselaw, supporting the majority's holding that a defendant must "utilize all the provisions available under article 38.071" in order to preserve a claim under the confrontation clause. Here, appellant objected to the admission of all three of the child victim's recorded statements on grounds that they failed to comply with section 2 of article 38.071 and violated his right to confrontation. Accordingly, I would hold that appellant was not estopped from complaining that his right to confrontation was denied. However, because I agree that the trial court did not abuse its discretion by overruling appellant's objections and admitting the recorded statements, I respectfully concur in the judgment.

The majority states that "article 38.071 section 3 provides an alternative method of confrontation that Morales could have elected to use" to cross-examine the victim. The majority then concludes that "Morales did not take advantage of this opportunity and now cannot claim that he was denied any rights under the confrontation clause." In support of this contention, the majority cites *Fultz v. State*, 940 S.W.2d 758, 761 (Tex.App.-Texarkana 1997, pet. ref'd). However, *Fultz* stands for the unremarkable proposition that a defendant fails to preserve error on a confrontation rights claim when his trial objections do not comport with his arguments on appeal.[2] The only other authority cited by the majority is *Prystash v. State*, 3 S.W.3d 522, 531 (Tex.Crim.App.1999). The cited section in *Prystash* simply distinguishes waiver from invited error and notes that "the law of invited error estops a party from making an appellate error of an action it induced."[3] Neither case supports the majority's contention that by failing to utilize the alternative method of confrontation provided for in section 3, an appellant is estopped from complaining that his confrontation rights were violated.

The majority states that appellant "acquiesced by submitting questions under section 2 and electing to request a recording under section 3." The majority also states that appellant is estopped from complaining that his confrontation rights were violated because "the trial court afforded the relief he requested on the method of confrontation he chose." The record reflects, however, that appellant did not "choose" to proceed under section 2 of article 38.071. Rather, the *State* filed a motion to admit the child victim's videotaped testimony under section 2, which the trial court granted. At the March 30, 2004 hearing on the State's motion, the State made it clear that it was requesting to proceed under section 2.

> [Court]: All right. Let me ask you this, assume that we do the two-well, the first tape is already done—we do the second tape. Under Section 3 of this article, then—
>
> [Prosecutor]: We're proceeding under Section 2, Your Honor. There are two different venues.
>
> [Court]: Okay.

1. See TEX CODE CRIM. PROC. ANN. art. 38.071 § 3 (Vernon 2005).

2. *Fultz v. State*, 940 S.W.2d 758, 760 (Tex.App.-Texarkana 1997, pet. ref'd).

3. *Prystash v. State*, 3 S.W.3d 522, 531 (Tex.Crim.App.1999).

[Prosecutor]: Section 3 deals with closed-circuit TV.

[Court]: Okay.

[Prosecutor]: I have not asked for that because I don't think the child would be capable of handling that.

[Court]: Okay. Section 3 says that either the attorney for the State or the attorney representing the defendant may request that the testimony of the child be taken via closed-circuit TV. I presume if—even if we do the two tapes, [appellant's counsel] would still request that the child be interviewed via closed-circuit TV at the time of the trial.

[Prosecutor]: Well, I had [sic] never seen it done both ways. But I presume he can request that. We would object to it because I think the only thing that's going to happen is the child is going to freeze up, scream, cry, and run under the table. And if [appellant's counsel] wants that televised to the jury, you know, from a prosecutor's stand point that can be very effective. But from a human personal standpoint, the State would object to it so as not to put the child through that trauma.

But I think the Court is correct in that the statute does not say that if the Court has allowed the videotape under Section 2, that that prohibits somebody from making a request under Section 3.

[Court]: And what if Mr.—I'm just asking these questions, because I don't know the answers. What if [appellant's counsel] wants to at trial call the child as a witness?

[Prosecutor]: Your Honor, I haven't looked up that issue, but the admission—one of the findings the Court has to make before ruling under Section 2 is whether the child is unavailable for trial. Presumably if the Court finds that the child is unavailable for trial because it would cause undue harm, psychological or physical harm to the child, then presumably, the child cannot be called as a witness.

And this hurts the State in a number of ways, Your Honor, because I can't, for example, put on the testimony of the outcry. Because the outcry—I mean, specifically the words the child said to her mother. Because the outcry is only available if the child is available or subject to being called. So I have to give up something in order to make this request. So it's certainly not a request that I'm making lightly. And I think that the—even if it's not explicitly laid out in the statute, I certainly think it's implicit in the statute if the Court makes a finding of unavailability, then the child is not to be called.

[Court]: Which is the outcry section?

[Prosecutor]: That's 38.072. And specifically, the section I'm talking about is Section 2–B, Subsection 3, the very last line.

[Court]: Okay. 38.071 is the child is unable to testify in the presence of the Defendant. So that would permit the tapes to be introduced. If the child was called via closed-circuit TV—

[Prosecutor]: Then I think the outcry statement could come in.

[Court]: Then the outcry would be admissible because the child is available to testify at the proceedings—

[Prosecutor]: Exactly, Your Honor.

[Court]:—or in any other manner provided by law, which would be closed-circuit TV.

[Prosecutor]: And that's one of the reasons that it's extraordinarily unusual for the State to ask for the videotapes, because it's the least desirable position as far as the State is concerned. And if I felt that the child was capable of testifying via closed-circuit TV, then I would

have made that request, so that I could get the outcry at [sic] well.

Of course the outcry is always admissible if there's some other exception. I haven't found one yet, though.

[Court]: Of course the outcry may well be the first videotape.

[Prosecutor]: Well, then that would fall under the different—the different statute.

[Court]: Okay. I will allow you to proceed under Section 2 and make the second videotape. And then we'll—once that's done, then [appellant's counsel] will be able to make whatever objections he deems appropriate at the time.

[Appellant's counsel]: Okay.

The record thus reflects that the State requested admission of the victim's videotaped testimony under Section 2 and would have requested that the victim testify by closed-circuit television under Section 3 if it believed the victim was able to do so. The burden of proof in a criminal case is on the State, and it is incumbent on the State to prove every element of the offense beyond a reasonable doubt.[4] If, as here, the State chose to proceed under section 2, but errors are committed in the course of section 2 proceedings, the majority's position requires the defendant to not only specifically object to such errors, but to *request* that the State present evidence against him (often the only evidence) via the victim's testimony by closed-circuit TV. I find nothing in the record to support the majority's position that appellant "chose" to proceed under section 2 and similarly, find no authority for the contention that he was required to request that the victim testify under section 3 in order to preserve his objections under section 2.

Having concluded that appellant preserved his objections, I now turn to his objections and whether the trial court abused its discretion in overruling them. With respect to tape one, appellant objected at the March 30, 2004 hearing to the admissibility of tape one on grounds that it denied him the right to confrontation. Appellant also objected to tape one on grounds that it "wasn't fairly done."

Appellant objected to tape two on grounds that it failed to comply with the requirements of section 2 and denied him the right to confrontation because (1) many of the questions propounded by appellant pursuant to section 2 paragraph (b) were not asked by the interviewer, (2) some questions were asked by the interviewer that were not propounded by appellant, which resulted in the victim testifying about extraneous offenses, and (3) tape two was therefore unfair and prejudicial. Appellant objected to the third tape on grounds that it violated section 2 because (1) the statute does not expressly provide that more than two videotapes may be made and (2) his right to confrontation was denied.

A trial court has discretion to decide the admissibility of evidence and, absent an abuse of discretion, its rulings will not be overturned.[5] As long as a trial court's ruling was within the zone of reasonable disagreement, the appellate court should affirm.[6]

I conclude that the trial court's ruling admitting the three tapes was within the zone of reasonable disagreement and therefore, the court did not abuse its dis-

4. *See* TEX. PEN.CODE ANN. § 2.01 (Vernon 2003); *Johnson v. State,* 673 S.W.2d 190, 194 (Tex. Crim.App.1984).

5. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim.App.2003).

6. *Id.*

cretion. The trial court granted the State's motion to proceed under section 2 and allowed appellant's counsel to propound questions to the victim pursuant to section 2 paragraph (b). Appellant objected to the second tape on grounds that some of the questions he propounded were not asked by the interviewer. The trial court recognized that some of appellant's questions were not asked on the second tape and noted that the interviewer "can't be the screener of the questions and decide what he's gonna ask and not ask." Although appellant objected to a "third interview," the trial court stated that it was not "a third tape," but "a continuation of the second tape." Although paragraph (b) of section 2 refers to *"the* recording," and paragraph (c) refers to *"a* recording made under Subsection (b)," the statute does not expressly limit a paragraph (b) "recording" to a single videotape, nor does it prohibit a "continuation" of a "recording." I conclude that the trial court did not abuse its discretion in determining that the three tapes were in compliance with section 2 requirements.

Appellant also objected to admission of the tapes on grounds that his right to confrontation was violated. The standard for addressing a confrontation complaint in the context of article 38.071 was modified by the United States Supreme Court's decision in *Crawford v. Washington.*[7] In *Crawford,* the Supreme Court held that, pursuant to the Confrontation Clause of the United States Constitution, testimonial statements of witnesses absent from trial are inadmissible unless the witness is un-

available and the defendant has had a "prior opportunity" to "cross-examine" the witness.[8]

In *Rangel v. State,* "a case of first impression in Texas," the Fort Worth Court of Appeals recently addressed a confrontation clause claim, post-*Crawford,* in the context of article 38.071.[9] The *Rangel* court held that (1) a child victim's videotaped statement was "testimonial" and therefore governed by *Crawford* and (2) by providing a defendant with an opportunity to submit written interrogatories to a child victim, article 38.071 section 2 provides a defendant with an opportunity for cross-examination.[10]

I agree with the *Rangel* court that article 38.071, section 2, which provides a defendant an opportunity to submit written interrogatories to a child victim, provides a prior opportunity for cross-examination, and thus, meets the requirements of *Crawford.*[11]

For the foregoing reasons, I agree that the trial court did not abuse its discretion in overruling appellant's objections to the admission of the three tapes. Accordingly, I would overrule appellant's issues and would affirm the trial court's judgment.

**7.** *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**8.** *Id.* at 68, 124 S.Ct. 1354.

**9.** *Rangel v. State,* 199 S.W.3d 523, 535 (Tex. App.-Fort Worth 2006, no pet.).

**10.** *Id.* at 535–37. In *Rangel,* the defendant failed to submit written interrogatories to the victim pursuant to section 2 of article 38.071, and thereby waived his confrontation clause challenge on appeal. *Id.* at 537.

**11.** *Id.* at 536.