NUMBER 13-03-00439-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JAMES FICARRO, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 148TH District Court of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Chief Justice Valdez


 

 A jury found appellant, James Ficarro, guilty of indecency with a child. See Tex.
Pen. Code Ann. § 21.11(a)(1) (Vernon 2003). The jury assessed punishment at 10 years
in prison, which was suspended for a period of ten years, and a $10,000 fine. On appeal,
appellant asserts eight points of error, which can be properly addressed as six. Appellant
contends that (1) the evidence was legally and factually insufficient to support his
conviction for indecency with a child, (2) the trial court erred by denying him the opportunity
to cross-examine a witness, in violation of the 6th Amendment of the United States
Constitution (issues two and three), (3) the trial court erred in permitting the State to
introduce images of child pornography over objection to relevance of the evidence and
probative value compared to its prejudicial and inflammatory effect (issues four and five),
(4) the trial court erred in permitting two outcry witnesses to testify about a single alleged
act of sexual assault, (5) the trial court erred in permitting an expert witness to give opinion
testimony that the child was truthful and, (6) the trial court erred in denying appellant's
motion for mistrial after one of the State's witnesses testified to an extraneous offense. We
affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

 J.R., the complainant, J.R.'s mother, and D.R., J.R.'s brother, all lived in a
townhouse that was directly adjacent to appellant's townhouse. On April 15, 2001,
appellant invited J.R.'s mother and her family over for a Easter barbeque. J.R.'s mother
agreed to attend and arrived at appellant's house with J.R. and D.R. Shortly after arriving,
appellant asked J.R.'s mother if he could take the children upstairs so that they could play
games and he could read books to them. J.R.'s mother reluctantly agreed. After about
fifteen minutes, D.R. returned downstairs but J.R. remained upstairs with appellant. 
Fifteen minutes later, J.R. and appellant returned downstairs. 

 As the party continued, appellant, at one point, sat down at a computer situated on
a table in the dining room. J.R. then walked to appellant and began hugging his leg. J.R.'s
mother immediately told her to stop, but J.R. replied: "But mom, he loves me." Appellant
then caressed J.R.'s hair and said: "Yeah, I really love her." J.R.'s mother testified that
J.R. had never done anything like that before. On cross-examination, J.R.'s mother stated,
however, that J.R. never acted as though she was afraid of appellant nor did she notice
anything out of the ordinary. The party ended around 4:00 p.m. 

 On April 16, 2001, while J.R. was in the bathroom, she began screaming "mom, my
butt hurts" and complained that it burned inside of her. Thinking that she only had a rash,
J.R.'s mother applied Desitin. She also began noticing changes in J.R.'s behavior. J.R.
began having nightmares, grabbing small objects and rubbing them on her genital area,
and on one occasion, she began "humping" her brother, D.R., while he was laying down
on a sofa. J.R.'s mother testified that, at this point, she was unsure what to make of her
daughter's behavior. 

 Towards the end of April, appellant's wife, walked to J.R.'s mother's house in order
to invite the family to a birthday party. J.R.'s mother testified that appellant's wife looked
very upset, and when she asked if something was wrong, appellant's wife told her that she
had caught her husband viewing child pornography on their home computer. J.R.'s mother
testified that appellant's wife told her that she was afraid to have appellant around her
children so she asked him to move out of their house. After having this conversation with
appellant's wife, J.R.'s mother began to suspect that something might have happened to
J.R., and began asking J.R. if someone had touched her inappropriately. 

 At first, J.R. was afraid to say anything, stating: "it's a secret, mommy. I can't tell
you. If I tell you, you are going to die, and my daddy is going to die, and that D.R. is going
to die." J.R.'s mother testified that it took her weeks to get J.R. to begin talking about what
happened. Finally, using two dolls, J.R. showed her mother how appellant had her lay on
her stomach, licked behind her ear, and put something in her butt that "hurt like a big
needle." On cross-examination, J.R.'s mother testified that at no time did J.R. specifically
refer to appellant as the person responsible for hurting her. However, JR.'s mother
stressed that at the time J.R. was only four years old, did not know appellant's name, and
could only point to appellant's house when she was being questioned. 

 On May 3, 2001, J.R.'s mother took her children to a birthday party held for one of
appellant's sons. At the party, J.R.'s mother testified that J.R. was acting as though she
was afraid of appellant. At one point, J.R. was hiding behind her, stating "mommy, hide
me from him," and "mommy, don't leave me with him." 

 On May 4, 2001, J.R.'s mother called the Nueces County Police Department. 
Officer Gomez took her initial statement. Officer Gomez testified that J.R.'s mother told
him that her child was kissed by appellant and touched in different ways, maintaining that
J.R. had said that she was kissed on the lips, behind the ears, on the feet, and licked on
the stomach and feet. 

 J.R's mother testified that on May 15, 2001 she took J.R. to the Child Advocacy
Center where she was interviewed by Kenna Bush, a forensic interviewer. Kenna testified
that J.R. told her that she was touched on her vaginal area by a man who lived next door,
and she also indicated that something happened upstairs, but was unable to get all the
details, but that J.R. specifically talked about the kitchen. 

 While J.R. was being interviewed by Kenna, J.R.'s mother gave the police yet
another statement. She told the police that appellant kissed J.R. on the back of the ear,
pulled her hair back and kissed her forehead, kissed her on the lips, licked her belly-button,
and put his "quiketzo" in her butt. (1) 

 Appellant was arrested on May 18, 2001. Appellant's computer was subsequently
seized pursuant to a search of appellant's home. Officer Robert McFarlane testified to
numerous images of child pornography found on appellant's hard drive and various
computer disks that were found in appellant's home. 

 On December 6, 2001, appellant was charged in a two-count indictment with the
offenses of aggravated sexual assault and indecency with a child. See Tex. Pen. Code
Ann. §§ 21.11(a)(1), 22.021 (Vernon 2003). Appellant pleaded not guilty to both offenses. 
On June 25, 2003, a jury found appellant not guilty on the aggravated sexual assault count
but guilty on the indecency with a child count. This appeal ensued. 

II. LEGAL SUFFICIENCY

A. Legal Sufficiency

 In his first issue, appellant contends that the evidence was legally insufficient to
prove the elements of indecency with a child. (2) Appellant contends that the State failed to
prove that appellant (1) had sexual contact with J.R, and (2) that appellant was the person
who committed the offense; (i.e., appellant was never identified as the person who
committed the offense). 

 B. Standard of Review 

 When there is a challenge to the legal sufficiency of the evidence to sustain a
criminal conviction, we consider whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Vodochodsky v. State, 158
S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most
favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony,
weighed the evidence, and drew reasonable inferences in a manner that supports the
verdict. See Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not
necessary that every fact point directly and independently to the defendant's guilt; it is
enough if the conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993). We consider even erroneously admitted evidence. Id. The jury is the exclusive
judge of the credibility of witnesses and of the weight to be given their testimony. Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in
the evidence is within the exclusive province of the jury. Id. 

C. Elements of Offense 

 A person commits the offense of indecency with a child "if, with a child younger than
seventeen years and not the person's spouse . . . engages in sexual contact with the child
or causes the child to engage in sexual contact." Tex. Pen. Code. Ann. § 21.11(a)(1)
(Vernon 2003). Sexual contact means the following, if committed with the intent to arouse
or gratify the sexual desire of any person: "any touching by a person, including touching
through clothing, of the anus, breast, or any part of the genitals of a child." Id. §
21.11(c)(1).

D. Sexual Contact

 Appellant first argues that the State's evidence was insufficient to prove the element
of "sexual contact." However, outcry testimony provided by Kenna indicated that J.R. was
touched on her vaginal area by a man who lived next door. Hearsay testimony of "outcry"
statements made by a sex offense victim twelve years of age or under to an adult are
admissible where the State complies with the statutory predicate. See Tex. Code. Crim.
Proc. Ann. art. 38.072 (Vernon 2005) (provides exception to the hearsay rule); Rodriguez
v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). As such, it is substantive evidence,
admissible for the truth of the matter asserted. Cagle v. State, 976 S.W.2d 879, 882 (Tex.
App.-Tyler 1998, no pet.). Thus, a child victim's outcry statement alone can be sufficient
to sustain a conviction for indecency with a child. See Rodriguez, 819 S.W.2d at 873;
Kimberlin v. State, 877 S.W.2d 828, 831 (Tex. App-Fort Worth 1994, pet. ref'd). Kenna's
testimony alone is sufficient to support appellant's conviction. Although J.R. did not testify
that appellant touched her genital area, contradictory statements relate to the weight of the
evidence, and conflicts in a witness's testimony, or in the testimony of several witnesses,
do not destroy the sufficiency of the evidence. See Cagle, 976 S.W.2d at 881. We
conclude that a rational jury could have inferred that appellant had contacted a part of
J.R.'s genitals.

E. Identification

 Appellant also argues that the evidence is insufficient because J.R. did not identify
him in court as her assailant. The identity of a perpetrator may be proven by either direct
or circumstantial evidence. Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986);
Roberson v. State, 16 S.W.3d 156, 157 (Tex. App.-Austin 2000, pet. ref'd); Couchman v.
State, 3 S.W.3d 155, 162 (Tex. App.-Fort Worth 1999, pet. ref'd). If there is no in-court
identification of the perpetrator's identity elicited from trial witnesses, no formalized
procedure is required for the State to prove the identity of the accused. Clark v. State, 47
S.W.3d 211, 214-15 (Tex. App.-Beaumont 2001, no pet.); Roberson, 16 S.W.3d at 167. 
The sufficiency of the evidence is then determined from the cumulative effect of all the
evidence; each fact in isolation need not establish the guilt of the accused. See Alexander
v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Further, the absence of an in-court
identification is merely a factor for the jury to consider in assessing the weight and
credibility of the witness's testimony. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986); Meeks v. State, 897 S.W.2d 950, 955 (Tex. App.-Forth Worth 1995, no pet.). 
Thus, the absence of an in-court identification does not render the evidence insufficient
where there is other evidence sufficient to identify the defendant as the perpetrator. See
Couchman, 3 S.W.3d at 162; Meeks, 897 S.W.2d at 954-55. 

 In this case, the record indicates that appellant lived adjacent to J.R.'s family. 
Kenna testified that she was told by J.R. that she was touched on her vaginal area by a
man who lived next door. J.R.'s mother testified that two or three days after the Easter
party, J.R. began screaming and having nightmares and saying that the monster was going
to get her. When J.R.'s mother asked where the monster was, J.R. would point toward
appellant's home and say "the guy." Moreover, the jury heard testimony from appellant's
wife, indicating her concern for J.R. after she found child pornography on appellant's
computer. J.R.'s mother also testified that while attending a birthday party for one of
appellants children, appellant called J.R. over, but J.R. would exclaim "mommy, don't let
me go with him," or "mommy, don't leave me with him." Lastly, on direct examination, J.R.
was asked if appellant had hurt her, and she indicated that he had. We conclude this
evidence is legally sufficient to meet the element of identification. See Couchman, 3
S.W.3d at 162-63. Viewing the evidence in the light most favorable to the jury's verdict,
any rational trier of fact could have found beyond a reasonable doubt that appellant
committed the offense of indecency with a child; therefore, we overrule appellant's first
issue.

III. CONFRONTATION CLAUSE

 By his second issue, appellant asserts a violation of his Sixth Amendment right to
cross-examine a witness. Specifically, appellant asserts that because he was denied the
opportunity to conduct a thorough cross-examination of J.R., he was precluded from testing
his defensive theory that J.R.'s allegations were the product of suggestive questioning and
that J.R. was being forced to make up a story. At trial, the State called J.R. to testify
against appellant. Arrangements were made so that J.R. would testify via closed circuit
television. J.R. testified as follows: 

 Q: (By the State) Oh. [J.R.], you know why we're here today, right?


 A: Yes


 Q: Who are we here to talk about?


 A: James Ficarro


 Q: Do you remember how old you were then?


 A: No


 Q: Were you as old as you are now or were you younger? 


 A: Younger 


 Q: Okay, do you remember how much younger?


 A: Four


 Q: Do you think you were four?


 A: (Nods)


 Q: Okay, Did James Ficarro hurt you?


 A: Yes


 Q: Where did he hurt you?


 A: He put a needle in my bottom. 


 Q: He put a needle in your bottom?


 A: (Nods.)


 Q: Did that hurt, [J.R.]?


 A: Yes 


 Q: Did he hurt you in another way, too? 


 A: Yes. 


 Q: How did he hurt you? Can you show the judge? 


 A: (Witness shakes head.) 


 Q: You want to just tell her? 


 A: (Nods.)

 

 Q: You can just tell her. Tell her what else he did. It's okay. Do you want a
Kleenex? 

 

 A: (Child begins crying). 


After a quick recess, the prosecutor and the judge attempted to have J.R. testify. The child
continued to be unresponsive. After the prosecutor unsuccessfully tried to get J.R. to talk,
the judge decided to end all questioning. Defense counsel objected, stating that he was
"denied his right to cross-examine a key witness" and requested the testimony be stricken
and the jury instructed that the testimony could not be used in its deliberations. The court
overruled the motion to strike and ruled that the child would not be brought back for any
purpose during the trial. 

A. Applicable Law and Analysis

 The Confrontation Clause of the Sixth Amendment to the United States Constitution
guarantees an accused's right "to be confronted with the witness against him." U.S.
Const. amend. VI; Tex. Const. art. I, § 10; Delaware v. Van Arsdall, 475 U.S. 673, 678
(1986); Carroll v. State, 916 S.W.2d 494, 496-97 (Tex. Crim. App. 1996). The purpose of
this right is to allow a defendant to cross-examine a witness, the principal means to testing
a witness's credibility. Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991)(en
banc). 

 A defendant may cross-examine a witness on any subject "reasonably calculated
to expose a motive, bias or interest for the witness to testify." Carroll, 916 S.W.2d at 497;
Miller v. State, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987) (en banc). Cross-examination
"allows facts to be brought out by tending to discredit the witness by showing his testimony
in chief was untrue or biased." Alford v. United States, 282 U.S. 687, 691-92 (1931);
Carroll, 916 S.W.2d at 497. "The exposure of a witness' motivation in testifying is a proper
and important function of the constitutionally protected right of cross-examination." Davis
v. Alaska, 415 U.S. 308, 316-17 (1974); Maxwell v. State, 48 S.W.3d 196, 199 (Tex. Crim.
App. 2001). It is also well established that the Confrontation Clause guarantees an
opportunity for effective cross-examination, not cross-examination that is effective in
whatever way, and to whatever extent, the defense might wish. Delaware v. Fensterer,
474 U.S. 15, 20 (1985) (per curiam) (emphasis in original); Spence v. State, 795 S.W.2d
743, 757 (Tex. Crim. App. 1990); Buckley v. State, 786 S.W.2d 357, 361 (Tex. Crim App.
1990); Tucker v. State, 771 S.W.2d 523, 532 (Tex. Crim. App. 1988). 

 Here, the State asked J.R. a total of fourteen questions before she began to cry and
was unable to continue with her testimony. Although her testimony was brief, she was able
to both identify appellant as the person who "hurt her" and as the person who hurt her by
"putting a needle in [her] bottom." Repeated attempts were made by both the State and
the trial judge to get J.R. to continue with her testimony. Appellant's counsel was not
permitted to make a similar attempt. Simply placing a child on the witness stand,
subjecting her to a series of leading question on direct examination, will not, in and of itself,
eliminate Confrontation Clause concerns. (3) Once a criminal defendant is afforded the
opportunity to cross-examine, even if the cross-examination proved impossible, Sixth
Amendment concerns would have been avoided. See Fensterer, 474 U.S. at 22 (holding
that the Confrontation Clause is generally satisfied where the defense had a full and fair
opportunity to expose a witness' "forgetfulness, confusion or evasion," thereby calling to
the attention of the fact-finder reasons to discredit the witness's testimony.) The absolute
denial of the right to cross-examine a witness who actually testified before a jury is a
practice not compatible with a fundamental constitutional right secured by both the United
States and Texas Constitutions. It was therefore constitutional error to deny appellant his
Sixth Amendment right to cross-examine J.R. 

B. Harmless Error 

 

 Because the Sixth Amendment right to cross-examination is a fundamental element
of due process of law, and because a violation of that right constitutes constitutional error,
we must reverse a trial court's judgment when such error is present unless we can
determine beyond a reasonable doubt that the error did not contribute to the conviction. 
See Tex. R. App. P. 44.2(a) (requiring reversal of constitutional error unless appellate court
determines beyond a reasonable doubt that the error did not contribute to the conviction). 
If there is a reasonable likelihood that the error materially affected the jury's deliberations,
then the error was not harmless beyond a reasonable doubt. Wesbrook v. State, 29
S.W.3d 103, 119 (Tex. Crim. App. 2000). 

 The jury heard testimony from Kenna, the State's first outcry witness. Her testimony
indicated that J.R. was touched by a man who lived next door on her vaginal area. J.R.'s
mother, the State's second outcry witness, attested to J.R.'s abnormal behavior, her outcry
regarding sexual penetration of the anus, and the fact that J.R. indicated that she was
kissed and touched on different parts of her body. Outcry testimony, by its very nature, is
cumulative of the testimony of the child victim. See Shelby, 819 S.W.2d at 551 (holding
that outcry testimony is necessarily cumulative of complainants' testimony). Here,
however, J.R. was unable to continue with her testimony. Therefore, the outcry testimony
provided by Kenna and J.R.'s mother was far more detailed in comparison to J.R.'s short
testimony. Thus, the relative importance of J.R.'s testimony to the State's case was
minimal. Moreover, we recognize that the jury acquitted appellant on the aggravated
sexual assault charge, the only charge clearly and directly testified to by the child. Thus,
it's clear that the jury disregarded J.R.'s brief testimony in reaching their verdict. Because
of the testimony of the State's outcry witnesses, and of the acquittal on the aggravated
sexual assault charge, error due to the lack of the opportunity to conduct a cross-examination of J.R. was harmless. (4) Appellant's second issue is overruled. 

IV. EXTRANEOUS OFFENSE

 In his third issue, appellant contends that the trial court erred in permitting the State
to introduce images of child pornography over his objection that (1) the evidence was not
material or relevant, and that (2) the evidence had little probative value compared to its
prejudicial and inflammatory effect. Specifically, appellant contends that the admission of
approximately 400 child pornography photographs was not relevant to his guilt, and the
probative value of this evidence was far outweighed by its prejudicial effect so as to
constitute reversible error. We disagree.

A. Texas Rule of Evidence 404

 Texas Rules of Evidence 404(b) states that evidence of other crimes, wrongs, or
acts is not admissible to prove the character of a person to show action in conformity
therewith. Tex. R. Evid. 404(b); Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim App. 2000). 
This evidence may, however, be admissible when it is relevant to a non-character
conformity fact of consequence in the case, such as intent or rebutting a defensive theory. 
See Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Thus,

 [T]he proponent of the evidence may persuade the trial court that the "other
crime, wrong, act" has relevance apart from character conformity; that it
tends to establish some elemental fact, such as identity or intent; that it tends
to establish some evidentiary fact, such as motive, opportunity or
preparation, leading inferentially to an elemental fact; or that it rebuts a
defensive theory by showing, e.g., absence of mistake or accident. 


Id. (citing Montgomery v. State, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990)). 


 Faced with an objection, the proponent of such evidence must satisfy the trial court
that the extraneous act has relevance apart from its tendency to prove character
conformity. Feldman v. State, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002). "Other crimes,
wrongs, or acts evidence" has noncharacter-conformity relevance where it logically serves
to make less probable defensive evidence that undermines an elemental fact. Powell, 63
S.W.3d at 438 (citing Montgomery, 810 S.W.2d at 387). 

 An appellate court must review a trial court's admissibility decision under an abuse
of discretion standard. Id. As long as the trial court's ruling was within the "zone of
reasonable disagreement," there is no abuse of discretion and the trial court's ruling will
be upheld. Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). 

 A person acts intentionally, or with intent, with respect to a result of his conduct
when it is his conscious objective or desire to cause the result. Tex. Pen. Code Ann. §
6.03(a) (Vernon 2003). Intent can be characterized as a contested issue for purposes of justifying
the admission of extraneous offense evidence to help prove intent if the
required intent for the primary offense cannot be inferred by the act itself or
if the accused presents evidence to rebut the inference that the required
intent existed. 


Johnson v. State, 932 S.W.2d 296, 302 (Tex. App.-Austin 1996, pet. ref'd). At trial, the
State introduced approximately 400 images taken from appellant's home computer. The
exhibits at issue were admitted during the guilt/innocence phase of trial as State's exhibits
23 through 41. A great majority of the images depicted children who were nude or partially
undressed. Exhibits 25 and 41 depicted sex acts involving children. The State also
introduced pictures of J.R., taken by appellant at the Easter party, that were saved in the
same folder where the child pornography was found. (5) At a pre-trial hearing, appellant
generally objected to the relevancy of all images. (6)
 The State, on the other hand, argued
that the images are indicative of appellant's intent to commit the sexual offense of
indecency with a child and sexual assault, and thus are admissible pursuant to Texas Rule
of Evidence 404(b). The indictment charges appellant with engaging in sexual contact
"with the intent to arouse and gratify the sexual desire of the defendant." Because the
element of intent in this case can only be proven by inferences from the evidence
presented, and because the surrounding circumstances must be shown in order to put the
offense in perspective, we hold that the State's introduction of such photographs were
relevant in helping the jury to determine whether appellant had the intent to arouse or
gratify his sexual desires. Lewis v. State, 676 S.W.2d 136, 139 (Tex. Crim. App. 1984)
(citing McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)); Bowles v. State,
550 S.W.2d 84, 85-6 (Tex. Crim. App. 1977). We hold that the trial court did not abuse
its discretion in admitting this evidence of intent under Texas Rules of Evidence 404(b).

B. Texas Rule of Evidence 403

 While the trial court may decide that the evidence is admissible under rule 404(b),
it may nevertheless exclude that evidence if it determines that the probative value of the
extraneous-act evidence is substantially outweighed by unfair prejudice. Tex. R. Evid. 403;
see Feldman, 71 S.W.3d at 754. However, the trial court need not engage in this
balancing test unless the opponent of the evidence further objects based upon Rule 403. 
Montgomery, 810 S.W.2d at 389. An objection based upon rule 403 is required to
preserve the issue before this court. See Bell v. State, 938 S.W.2d 35, 49 (Tex. Crim App.
1996); see also Long v. State, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991) (expressing
that when admitting evidence, the trial judge does not sua sponte engage in balancing the
probative value against the prejudice but does so only upon sufficient objection invoking
rule 403) (citing Montgomery 810 S.W.2d at 388).

 Here, appellant cites to various parts of the record where he allegedly requested the
trial court to conduct a rule 403 balancing test. However, in reviewing the parts of the trial
record cited by appellant, we find no objection or request by appellant of any sort. At trial,
when the State sought to introduce exhibits 23, 26-31, 32-37, and 38-40, the only objection
lodged by appellant was: "no objections other than those made known in pre-trial matters." 
Our review of the preliminary hearings conducted by the trial court, however, indicate that
appellant made only a request to the trial court that it conduct a "relevance" hearing with
regard to the introduction of the child pornography. At no point did appellant specifically
request a hearing to be conducted pursuant to rule 403. A rule 403 objection is not
implicitly contained within a relevancy objection; rather a separate rule 403 objection must
be lodged to preserve error. Montgomery, 810 S.W.2d at 388; Shultze v. State, 177
S.W.3d 26, 40 (Tex. App.-Houston[1st Dist.] 2005, pet. ref'd). Thus, we hold appellant has
failed to preserve error with regard to exhibits 23, 26, 32-37, and 38-40. Tex. R. App. P.
33.1(a)(1).

 The only proper objection appellant has raised with regard to rule 403 is when the
State sought to introduce exhibits 25 (7) and 41. (8) On appeal, appellant asserts that the
photographs were more prejudicial than probative and that the trial court judge failed to
engage in the proper balancing test. Once a rule 403 objection as to prejudice versus
probative value is invoked, the trial judge has no discretion as to whether or not to engage
in the balancing test required by that rule. See Long, 823 S.W.2d at 271-72, n.18. 
However, a trial judge is not required to sua sponte place any findings he makes or
conclusions he draws when engaging in this test into the record, nor did appellant request
such to be affirmatively shown. Williams v. State, 958 S.W.2d 186, 195-96 (Tex. Crim.
App. 1997); Ford v. State, 26 S.W.3d 669, 676 (Tex. App.-Corpus Christi 2000, no pet.). 
Rather, a judge is presumed to engage in the required balancing test once rule 403 is
invoked. Thus, there is no requirement that the trial court announce for the record that it
conducted and completed the balancing test in its own mind. See Ford, 26 S.W.3d at 676. 

 Rule 403 favors the admission of relevant evidence and carries a presumption that
relevant evidence will be more probative than prejudicial. Id. (citing Montgomery, 810
S.W.2d at 389). A court may consider several factors in determining whether the probative
value of photographs is substantially outweighed by the danger of unfair prejudice. These
factors include, but are not limited to: the number of exhibits offered, their gruesomeness,
their detail, their size, whether they are black and white or color, whether they are close-up,
and whether the body depicted is naked or clothed. Williams, 958 S.W.2d at 196. 

 Regarding exhibits 25 and 41, we note that the photographs are small in size, are
not gruesome, and did not require much time to present at trial. Indeed, we recognize that
exhibits 25 and 41 were not even published to the jury during the trial proceedings. Before
the State introduced exhibit 25, and after appellant objected to its introduction, the trial
judge felt that the jury had seen enough and ruled that the State was no longer going to
publish any more photographs to the jury. Rather, the trial judge admitted the exhibits and
held that the jury would have access to the exhibits during deliberation. The copies of the
photographs in the record are in black and white, but it is reasonable to assume that the
original exhibits were in color. Exhibit 25 depicts young children engaged in sexual acts
with adults, including penetration. Exhibit 41 depicts young children who are either naked
or partially undressed, and a few depict sexual acts between children. Although not
gruesome, the photographs are disturbing. 

 In arguing for the probative value of exhibit 25, the State asserts that the graphic
nature of the photos depicted the kind of activity in which appellant was alleged to have
engaged in. With regard to exhibit 41, the State asserts that there is no evidence that the
mere volume of images caused the jury to act irrationally and convict appellant on the basis
of the images alone. 

 We agree with the State's assessment that the probative value of the photographs
substantially outweighs their prejudicial effect. Although the photographs are certainly
prejudicial, the trial court does not abuse its discretion in admitting prejudicial evidence that
merely reflects what appellant has done. See Sonnier v. State, 913 S.W.2d 511, 519 (Tex.
Crim. App. 1995). Under the circumstances of this case, we cannot conclude that the trial
court's determination to admit images of child pornography lies outside the zone of
reasonable disagreement. Santellan, 939 S.W.2d at 169. The jury is entitled to place the
offenses alleged against appellant in the context of its surrounding circumstances. In light
of the evidence in this case, the images depicted in exhibits 25 and 41 are probative of
appellant's intent to commit either sexual assault or indecency with a child, as alleged in
the State's indictment. We also find it significant that appellant was acquitted of the
aggravated sexual assault charge, which belies any argument that the images that
reflected children engaged in sexual acts (i.e., penetration) caused the jury to render
judgment on an improper basis. Accordingly, we conclude the trial court did not abuse its
discretion in admitting into evidence exhibits 25 and 41. Issue three is overruled. 

V. OUTCRY TESTIMONY

 In his fourth issue, appellant asserts that the trial court erred when it permitted two
outcry witnesses to testify about a single alleged act of sexual assault that occurred on the
same day. (9) 

A. Standard of Review 

 We review the trial court's ruling regarding the admission of evidence under an
abuse of discretion standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim.
App. 2000); Sims v. State, 12 S.W.3d 499, 500 (Tex. App.-Dallas 1999, pet. ref'd) (trial
court had broad discretion in deciding proper outcry witness). We will not disturb the ruling
on appeal if it is within the zone of reasonable disagreement. See Weatherred, 15 S.W.3d
at 542. 

B. Applicable Law

 The outcry testimony of a child victim is hearsay when it is offered for the truth of
the matter asserted. Dorado v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992). 
However, it is admissible if it falls within an exception to the hearsay rule. Id. In child
abuse cases, article 38.072, sections 2(a)(1) and (2) of the code of criminal procedure
provide for the admission of hearsay statements describing the offense that are made by
the child victim, who is twelve years or younger, to the first person eighteen years or older. 
Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a) (Vernon 2005). To qualify as a proper
outcry statement, the child must have described the alleged offense in some discernable
way and must have more than generally insinuated that sexual abuse occurred. See Sims,
12 S.W.3d at 500. 

 Multiple outcry witnesses can testify about different instances of abuse committed
by the defendant against the victim. Hernandez v. State, 973 S.W.2d 787, 789 (Tex.
App.-Austin 1998, pet. ref'd). If the child victim first described a different type of abuse to
a second outcry witness, the second witness could testify about the different instance of
abuse. Turner v. State, 924 S.W.2d 180, 183 (Tex. App.-Eastland 1996, pet. ref'd)
(explaining that a police officer could testify about the victim's outcry about penile
penetration because victim's previous outcry to counselor was about digital penetration);
see Hernandez, 973 S.W.2d at 789 (concluding that a CPS worker could testify about
victim's outcry of sexual assault at one location because victim's previous outcry to his
mother was about another sexual assault at different location). 

C. Application of the Law to the Facts

 In this case, there were two outcry witnesses: J.R.'s mother and Kenna. J.R.'s
mother testified that J.R. told her appellant made her lay down on her stomach on a table,
licked her belly button, licked her ear, and penetrated her anus that hurt like a big needle. 
Bush testified that J.R. told her that she was touched on her vaginal area by a man who
lived next door while in the kitchen and also indicated that something had happened
upstairs, but was unable to get all the details; this was the first time that J.R. made a
statement about being touched in her vaginal area. We conclude that these two witnesses
were both proper outcry witnesses. See Hernandez, 973 S.W.2d. at 789; Turner, 924
S.W.2d at 183. Each witness testified to a different type and instance of abuse committed
by appellant against J.R. See Turner, 924 S.W.2d at 183. Consequently, we overrule
appellant's fourth issue. 

VI. EXPERT WITNESS 

 In his fifth point of error, appellant claims that the trial court erred by admitting the
testimony of Paula Rosenstein, the State's expert witness who testified about child abuse
dynamics. Appellant contends that this testimony was improperly admitted because it
directly commented on J.R.'s truthfulness. To preserve error, the complaint on appeal must comport with the objection in the
trial court. Long v. State, 130 S.W.3d 419, 429 (Tex. App.-Houston [14th Dist.] 2004, no
pet.); see Tex. R. App. P. 33.1(a). Appellant objected to Rosenstein's testimony during the
following exchange: 

 (Prosecutor): Based on your training, your experience, the information
provided to you, your observation of the videotape, and the live testimony of
J.R., does J.R., in fact, exhibit behaviors that are, in fact, significant when
you're talking about sexual abuse?


 (Defense Counsel): Your Honor, I'm going to object that's going into way a
different level of expertise. She's asking this witness to give a specific
opinion about this child, who the expert has not been - I mean Mrs.
Rosenstein had not been qualified as an expert to do - to take such action. 
She had been qualified to state what in her practice children exhibit of sexual
abuse. She has not been qualified to testify as to this child in particular. It
is in violation of Rule 602, lack of personal knowledge. She's not visited with
the child. It is totally inappropriate for this case. 


 (State responds and trial court overrules objection)


 (Rosenstein): From everything that I've seen and the paperwork that I've
been provided I see that - the reported symptoms that J.R. has experienced
and verbalized and what I saw myself on the video and in her testimony are
all significant for a child that has been molested. 


The inability of a witness to testify to a matter unless evidence is introduced to support a
finding that a witness has personal knowledge of the matter is not the same as an expert
witness' inability to testify as to the truthfulness of a child victim. Assuming, however,
appellant's objection was properly sufficient to apprise the trial court and the State of the
nature of appellant's complaint, appellant's complaint is without merit. See Ex parte Little,
887 S.W.2d 62, 65 (Tex. Crim. App. 1994) (stating objection may be phrased in any
manner which sufficiently apprises trial court and opposing counsel of nature of complaint.)
 We review a trial court's decision to admit evidence using an abuse of discretion standard. 
Sells v. State, 121 S.W.3d 748, 766 (Tex. Crim. App. 2003). 

 Expert testimony must aid, not supplant, the jury's fact-finding role, and expert
testimony that constitutes a direct opinion on the truthfulness of a witness does not assist
the jury, and is thus inadmissible. Schutz v. State, 957 S.W.2d 52, 70 (Tex. Crim. App.
1997); Yount v. State, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). However, expert
testimony that provides useful background information to aid the jury in evaluating the
testimony of another witness is admissible. For instance, expert testimony explaining that
a child exhibits behavioral characteristics that have been empirically shown to be common
among children who have been abused is admissible. Cohn v. State, 849 S.W.2d 817,
819 (Tex. Crim. App. 1993); Perez v. State, 113 S.W.3d 819, 832 (Tex. App.-Austin 2003,
pet. ref'd); Hitt v. State, 53 S.W.3d 697, 707 (Tex. App.-Austin 2001, pet. ref'd); Vasquez
v. State, 975 S.W.2d 415, 417 (Tex. App.-Austin 1998 pet. ref'd). The State may also
elicit testimony concerning the typical characteristics of victims of sexual abuse. Schutz,
957 S.W.2d at 69. 

 Rosenstein testified about the characteristics of child victims of sexual abuse,
explaining that most victims of sexual abuse form a "traumatic bond" with their abusers,
that they feel shame and confusion about the abuse, that outcries do not happen
automatically and usually occur in bits and pieces over a period of extended time, and that
children of sexual abuse can often act out sexually. Rosenstein also testified that certain
hypothetical fact situations, based on the facts in the instant case, are consistent with
sexual abuse. 

 In his brief to this Court, appellant cites various answers given by Rosenstein that
allegedly comment on the truthfulness of J.R.'s allegations. After a thorough review of the
record, we find that the answer quoted above is as close as Rosenstein even came to a
direct comment on truthfulness. Rosenstein never claimed that J.R. was telling the truth
or that child complainants in sexual abuse cases always tell the truth. Moreover,
Rosenstein was careful to speak in generalities and, on more than one occasion, stressed
that she was not testifying as to J.R. in particular. 

 Because Rosenstein limited her testimony to the general characteristics of child
victims of sexual abuse and whether hypothetical fact situations are consistent with sexual
abuse, we hold that the trial court did not abuse its discretion by admitting the testimony. 
See Cohn, 849 S.W.2d at 818-19. Appellant's fifth issue is overruled. 

VII. MOTION FOR MISTRIAL 

 In his final point of error, appellant contends that the "trial court erred when it denied
appellant's timely motion for mistrial after the State's witness, J.R.'s mother, testified that
appellant committed sexual offense acts against other children." 

 At trial, the State questioned J.R.'s mother about a conversation she had with
appellant's wife shortly after she caught her husband viewing child pornography on their
home computer. After testifying that appellant's wife was extremely upset, the following
exchange occurred:

 Q. (Prosecutor): What, if anything, did she tell you about J.R.?

 

 A. (J.R.'s mother): She didn't tell me anything about J.R.

 

 Q. (Prosecutor): What - did she tell you anything else at that time about
what was going on between her and her husband? 

 

 A. (J.R.'s mother): Yes, she did. 

 

 Q. (Prosecutor): And that was? 

 

 A. (J.R.'s mother): That he had done these things before.


Defense counsel objected to the testimony as highly prejudicial and a violation of the
motion in limine, requested an instruction to disregard, and moved for mistrial. The trial
court immediately excused the jury and addressed appellant's objection to the testimony. 
The trial court overruled appellant's objection and denied his motion for mistrial; however,
the trial court granted appellant's request for an instruction. 

 Mistrial is appropriate for only "highly prejudicial and incurable errors," and "may be
used to end trial proceedings when faced with error so prejudicial that 'expenditure of
further time and expense would be wasteful and futile.'" Hawkins v. State, 135 S.W.3d 72,
76-77 (Tex. Crim. App. 2004); Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App.
2003) (quoting Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). The trial court
promptly instructed the jury to disregard the objected to testimony. See Ovalle v. State,
13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard
will cure error associated with an improper question and answer."). When a trial court
instructs a jury to disregard certain testimony, we presume that the jury follows the trial
court's instructions. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); cf. Wood,
18 S.W.3d at 648 (noting that a trial court is required to grant a motion for mistrial only
when the improper question is "clearly so prejudicial to the defendant and is of such
character as to suggest the impossibility of withdrawing the impression produced on the
minds of the jurors."). After reviewing the record, we cannot conclude that the trial court
abused its discretion in denying appellant's motion for mistrial. Appellant's final issue is
overruled. 

VIII. CONCLUSION

 Having overruled all of appellant's issues on appeal, we affirm the judgment of
the district court.

 

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 26th day of April, 2007.
1. "Quiketzo" is a term recognized by J.R. to mean penis. 
2. Appellant also argues that the evidence is factually insufficient to sustain his conviction. At no point,
however, does appellant (1) make an independent factual sufficiency analysis, (2) make an effort to explain how the
evidence is insufficient under any standard of reviewing factual sufficiency, or (3) request the appropriate relief for
factual sufficiency. We hold that appellant's claim that the evidence in this case is factually insufficient is inadequately
briefed and not properly before this Court. We will, therefore, not address appellant's factual sufficiency claim. Tex.
R. App. P. 38.1(h); See also Chavero v. State, 36 S.W.3d 688, 695 (Tex. App.-Corpus Christi 2001, no pet.).
3. This proposition finds support in articles 38.071 and 38.072 of the code of criminal procedure. 
Article 38.071 provides, in certain specified circumstances, a child victim's testimony may be taken via
videotape or closed-circuit television outside a defendant's presence. It is well established that the requisite
reliability of the child witness' testimony may be assured absent face-to-face encounter through the combined
effect of the witness' testimony under oath (or other admonishment, appropriate to the child's age and
maturity, to testify truthfully), subject to cross-examination, and the factfinders ability to observe the witness'
demeanor, even if only on a video monitor. Marx v. State, 987 S.W.2d 577, 580 (Tex. Crim. App. 1999)
(emphasis added) (citing Maryland v. Craig, 497 U.S. 836, 857-59 (1990)). Moreover, under 38.071, the right
to confrontation is not violated if the defendant is given the opportunity to submit written interrogatories to an
unavailable witness. See Tex. Code Crim. Proc. Ann. article 38.071, § 2(b) (Vernon 2005); Rangel v. State,
199 S.W.3d 523, 536 (Tex. Crim. App. 2006); Morales v. State, 2006 Tex. App. LEXIS 9771, at *13 (Tex.
App.-Corpus Christi, 2006, no pet. h.) (designated for publication). Also, article 38.072 provides that hearsay
testimony of "outcry" statements made by a sex offense victim twelve years of age or under to an adult are
admissible where the State complies with the statutory predicate. See Tex. Code Crim. Proc. Ann. art 38.072
(Vernon 2005). The Texas Court of Criminal Appeals has recognized that article 38.072 does not implicate
a denial of a defendant's right to confrontation of the witnesses against him because of the requirement of
section (2)(b)(3) that the child testified or be made available to testify in the proceedings against the accused. 
Buckley v. State, 786 S.W.2d 357, 361 (Tex. Crim. App. 1990). Thus, a criminal defendant's sixth
amendment right to confrontation is not infringed upon in cases where the State called the child victim to
testify during its case in chief and tendered the child to the defendant for cross-examination. id.; Villalon v.
State, 791 S.W.2d 130, (Tex. Crim. App. 1990) (emphasis added). Thus, the obvious purpose of the two
statutes is to provide a way to protect child complainants while at the same time preserving the constitutional
rights of those stand accused. See Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon 2005); Morales, 2006
Tex. App. LEXIS 9771 at *13. We note here that appellant's sixth amendment claim is not framed in terms
of a violation of either statute. 
4. We note that appellant does not raise Sixth Amendment concerns regarding the admissibility of
J.R.'s outcry statements.
5. Appellant does not specifically challenge the admissibility of the pictures of J.R.
6. Defense counsel made the following argument: 

 

 basically what I want to do is I want the court to be committed on the record as to what relevancy you
found to admit all of these documentations [sic]. 


 Your honor, the State is offering an extraneous offense, which constitutes the child pornography in this
case. I have made an objection - or I intend to make an objection on relevance. If the court is going
to deem that the material is relevant, then I think I'm entitled to a hearing on the relevancy itself. 
That's what I'm going to ask the court to do, is grant me a hearing before that testimony is actually
offered.


 After reviewing a transcript of a pre-trial hearing previously conducted, the court made the following ruling:


 And my statement at that time was that these are issues that you can get into on cross-examination, and
I'm going to stick with that ruling. So for the record, I'm going to deny your request for a hearing on
the relevancy. I had ruled that it will be relevant and admissible. You can get into that on cross
examination of the witness.

7. When the State sought to introduce exhibit 25, appellant made the following objection: 


 Your honor, our objection that this is being introduced as an extraneous offense. The - these
particular pictures are so graphic that it is going to so prejudice this jury that this man is not
going to get a fair trial in the case in chief, and our objection is that the prejudicial effect of
these particular photographs - she has got another 250 photographs of child pornography
she's going to be introducing, but theses specific photographs are so prejudicial they
outweigh any benefit as an extraneous offense.
8. Appellant made the following objection with regard to the introduction of exhibit 41: "Your honor, we
just think that the mass of volume that she is trying to introduce here is trying to create and inflame this jury,
and I see no benefit to these. The thumbnails are those pictures that nobody can say whether they were
voluntarily hit or not." 
9. At a pre-trial hearing, appellant's counsel made the following argument: "We're not talking about something
that took place over a period of months and there were two separate touching or two separate penetrations or two
sodomized [sic] situations. We're talking about one situation of one instance on Easter day at the residence of Mr.
Ficarro."